Argued and submitted May 18, reversed and remanded December 27, 2000

## Ann N. WALSH,
*Appellant,*

*v.*

## C & K MARKET, INC.,
an Oregon corporation,
*Respondent.*

## (98CV0321; CA A107164)

16 P3d 1179

George W. Kelly argued the cause and filed the brief for appellant.

Robert E. Bluth argued the cause for respondent. With him on the brief was Bluth & Billin, P. C.

Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff seeks damages for injuries that she suffered when the automatic doors at defendant's grocery store malfunctioned and hit her as she was entering. She appeals from a judgment that the trial court entered after granting defendant's motion for a directed verdict at the close of plaintiff's evidence.[1] ORCP 60. The trial court held that plaintiff was a licensee at the time of her injury rather than an invitee, as she had alleged. We reverse.

Because we are reviewing a directed verdict, we state the facts most favorably to plaintiff, the losing party. Defendant operates Ray's Food Store in Harbor, Oregon. Plaintiff lives near the store and shops at it five or six times a week. On November 23, 1996, she went to the store with a friend, who intended to deliver a videotape to a store employee. Plaintiff did not intend to purchase anything on this particular visit. While plaintiff was entering the store, the automatic doors closed on her, causing the injuries in question. There is evidence from which the jury could conclude that defendant knew that the doors frequently malfunctioned, that defendant was negligent in not permanently fixing the malfunction, and that plaintiff's injuries were the result of that negligence.

In her complaint, plaintiff alleges that she was an invitee of defendant at the time of her injury. In its original answer, defendant admitted that allegation; however, in an amended answer filed ten days before trial, it changed the admission to a denial. After plaintiff rested, defendant moved for a directed verdict on the ground that plaintiff was only a licensee rather than an invitee, as she had alleged. Defendant emphasized that plaintiff did not intend to shop or to purchase anything when she entered the store at the time of the injury. Rather, defendant argued that plaintiff was simply going to visit its employee and that that employee was not a manager and did not otherwise have any authority to invite

---

[1] Plaintiff disputes whether she had fully rested before defendant made its motion. Because of our disposition of the case, we do not need to resolve that question.

her into the store on defendant's behalf. The trial court granted the motion.[2]

■■■ Oregon adheres to the traditional rules governing the liability of an owner or possessor of land, under which the duties that the occupier owes to a person who comes on the land depend on whether the person is an invitee, licensee, or trespasser. The occupier owes the greatest duties to an invitee, including both a duty to warn of latent dangers and an affirmative duty to protect the invitee against dangers in the condition of the premises about which the occupier knows or should reasonably have known. *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 192, 421 P2d 370 (1966). Oregon has adopted two tests for determining whether a person is an invitee. Under the first, the "economic advantage" test, anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee. *Id.* at 191-92; *Reed v. Jackson County*, 105 Or App 24, 26-27, 803 P2d 1194 (1990), *rev den* 311 Or 261 (1991). Under the second, the "invitation" test, a person is an invitee when the occupier, expressly or impliedly, leads the person to believe that it intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared. *Parker v. Hult Lumber & Plywood Co.*, 260 Or 1, 8, 488 P2d 454 (1971); *Reed*, 105 Or App at 26-27.

*Restatement (Second) of Torts* § 332 (1974), describes both of these tests, although it uses somewhat different terms. Both the Supreme Court and this court have referred to the text of and the comments to section 332 in considering whether a person is an invitee. Although the Supreme Court once refused to adopt a specific phrase in a comment to section 332, the courts have generally found the section to be

---

[2] After the court orally granted the motion for a directed verdict, plaintiff moved to amend her complaint to allege alternatively that she was a licensee. The court denied the motion, in part because of its timing. Because we conclude that there was evidence that plaintiff was an invitee, we do not need to reach plaintiff's assignment of error concerning that motion. If plaintiff renews the motion on remand, the court will be able to rule on it based on the situation that exists at the time of the renewed motion.

consistent with Oregon law. *See Taylor v. Baker*, 279 Or 139, 146-47, 566 P2d 884 (1977) (generally following section 332 but refusing to adopt one phrase in the comments); *Bidiman v. Gehrts*, 133 Or App 145, 149, 890 P2d 436, *rev den* 321 Or 512 (1995) (relying on a different comment); *Baker v. Lane County*, 28 Or App 53, 57 n 2, 558 P2d 1247 (1977) (quoting the text of section 332).

We find section 332 and the comments to it helpful in resolving the issues in this case. Section 332 provides:

"(1)  An invitee is either a public invitee or a business visitor.

"(2)  A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3)  A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

A person whom section 332 calls a "public invitee" is, under the Oregon cases, an invitee under the invitation test, while a person whom section 332 calls a "business visitor" is an invitee under the economic advantage test.[3]

The issue in this case is whether plaintiff was an invitee when she went into defendant's store, even though she did not intend to purchase anything during that specific visit. We conclude that the jury could find that plaintiff was both a public invitee under the definition in section 332(2), and thus an invitee under the invitation test, and that she was a business visitor, and thus an invitee under the economic advantage test. Indeed, the tests tend to merge in this situation, because a broad invitation may well be economically advantageous to defendant's business.

We begin with the invitation test. The crucial issue under the invitation test is the nature of the invitation that a store owner gives to the general public. In *Baker*, we applied

---

[3] We do not need to decide whether the tests in section 332 are an exhaustive statement of what may make a person an invitee under Oregon law.

that test to hold that a boy who was present at a county fairground that was generally open to the public, and who was injured when he wandered to a location away from the function that he was attending, was an invitee under the invitation test. We noted that cases hold that "when a public body maintains and occupies land or facilities which are open to the public, then all members of the public who use the land or facility for the purposes for which they are held open have invitee status." 28 Or App at 58.

■       As *Baker* suggests, invitee status will depend on both the purpose of the occupier who makes the invitation to the public and the understanding of the public that receives it. The invitation of the operator of a store selling groceries and general merchandise to the public is likely to be quite broad, because the operator is likely to view every person who enters as a potential customer. The invitation, thus, is not necessarily limited to people who are interested in making a purchase during that specific visit. As plaintiff argued to the trial court:

> "Ray's opens their doors up to the public and says, 'Come to our stores. Look at our prices.' When you park at the parking lot you get out of your car; you see flyers, advertisements; you're subject to those on the outside, on the doors, on the inside[.] [W]hen you walk into the front doors you're subject to people standing right there trying to sell you things[.] * * * That's exactly what Ray's wants.

> "Why? Because if you're subject to those things, eventually those enticements will lead you to buy something and incur [sic] * * * an economic benefit upon Ray's. When you stand in line at the checker line, what do they have there. Impulse items. Things that you do not plan on buying but they want you to pick up."

The few relevant authorities generally agree with plaintiff in this respect. Comment c to section 332 emphasizes that the proper inquiry is how a reasonable person, examining the words or conduct of the occupier, would interpret the occupier's willingness to receive a particular person.

> "The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public, or classes or members of it, a willingness

or unwillingness to receive them. Thus the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance, *not only for the purpose of buying, but also for the purpose of looking at the goods displayed therein or even for the purpose of passing through the shop.* This is true because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business." (Emphasis added.)

Similarly, a leading hornbook states that a person is "an invitee in a store even if [the person] enter[s] only to kill time between airplanes and intend[s] to buy nothing." Dan B. Dobbs, *Handbook of the Law of Torts* § 234 at 601 (2000). We conclude that a store owner's invitation ordinarily extends to the public at large, because store owners want to encourage as many people as possible to view their goods and to become purchasers. The jury, therefore, could find that plaintiff was an invitee under the invitation test on the record before us.

■    The same conclusion follows under the economic advantage test. Comment f to section 332, which discusses business invitees, notes that it is not necessary that the visitor's purpose be to enter into immediate business dealings with the occupier. Rather, those who enter merely to look at the goods displayed are also business visitors. What matters is not whether the specific visit offers the prospect of business dealings but that the visit has a reasonable connection with another visit that does. That comment is consistent with *Farrier v. Levin*, 176 Cal App 2d 191, 1 Cal Rptr 742 (1960), in which the court held that the evidence supported a conclusion that a person who was injured when she accompanied a friend to a store was an invitee, even though the plaintiff had no intention of making a purchase during that visit. The court held that she was a potential customer and thus within the class of persons that a merchant normally wants to have observe and inspect its merchandise. 1 Cal Rptr at 750.[4]

The case that we have found that is factually closest to this one is *Renfro Drug Co. v. Lewis*, 149 Tex 507, 235

---

[4] Similarly, a person who goes to a shopping mall is a business invitee whether or not the person makes a purchase. The mere possibility of a future purchase is sufficient. *State v. Mention*, 12 Conn App 258, 260-61, 530 A2d 645, 647, *cert den* 205 Conn 809, 532 A2d 78 (1987) (reversing conviction of criminal trespass).

SW2d 609 (1950). In that case, the plaintiff had an appointment with a physician in a downtown office building. He parked in a parking garage that was attached to that building and then went through a door from the garage that led directly into the defendant's drug store. He fell and was injured due to alleged defects in the entry. The plaintiff intended to pass through the store to the building lobby, where he would take an elevator to the physician's office. Although the plaintiff had previously purchased items at the drug store, he did not intend to do so on this occasion. The Texas court, relying in large part on the predecessor to section 332, held that there was sufficient evidence for the jury to find that the plaintiff was a business invitee of the drugstore.

> "Renfro had its sign on the door where the injury occurred advertising its prescription department, and Renfro's manager testified that the door was for the use of the general public. Thousands used the passageway through the drugstore each month. Lewis had been a customer of the store on a former occasion. The presence of members of the general public in and passing through the drugstore tended to increase Renfro's business." 235 SW2d at 617.

Thus, the very fact that the plaintiff was in the defendant's store, even though the plaintiff's immediate purpose had nothing to do with the defendant's business, was held to be to the defendant's economic advantage. There was, therefore, evidence to support the trial court's implied finding that the plaintiff was an invitee.

What is common to all these discussions is the recognition that foot traffic of any sort is potentially beneficial to the business of a store operator. As a result of that potential advantage, a store is held to have extended a broad invitation to the public at large, making all who enter public invitees. The expectation is that future economic advantage will accrue from all who accept the invitation. These considerations certainly apply in this case. Plaintiff frequently shopped at defendant's store both before and after her injury. Although she did not intend to purchase anything at the time of her injury, she could readily have done so if she had seen something that she wanted. A jury could find on these facts

that her presence was within the scope of defendant's invitation to potential customers and that, both because of her possible purchase during that specific visit and because the visit tended to reinforce her general habit of shopping at defendant's store, it provided an economic advantage to defendant. Thus, there was evidence from which the jury could find that plaintiff was an invitee at the time of her injury as she alleged. The trial court erred in holding otherwise.

Reversed and remanded.