Submitted on record and briefs August 6, reversed and remanded
December 8, 2004

Sharon Kaye CASSIDY,
*Appellant,*

*v.*

Brenda BONHAM,
*Respondent.*

0200146C; A122210

102 P3d 748

Sharon Kaye Cassidy filed the brief *pro se*.

Cecil A. Reniche-Smith, Janet M. Schroer, and Hoffman, Hart & Wagner, LLP filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

In this premises liability action, plaintiff appeals, challenging the trial court's allowance of summary judgment for the defendant property owner. Plaintiff argues that the trial court erred in determining that plaintiff was a licensee, and not an invitee, and that defendant had not breached any duty of care owed to plaintiff as a licensee. We conclude that the summary judgment record presents a genuine issue of material fact as to whether plaintiff was an invitee, and not a licensee, at the time of her injury. Consequently, we reverse and remand.

Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In reviewing the allowance of summary judgment, we view the evidence in the light most favorable to the nonmoving party, here plaintiff, drawing all reasonable inferences in her favor. *Bachmeier v. Tuttle*, 195 Or App 83, 85, 96 P3d 871 (2004). So viewed, the record discloses the following material facts.

Defendant lives in The Dalles and owns a rental house near her home. In August 2000, defendant placed a newspaper advertisement for the rental, and plaintiff and her husband, Joseph, responded. Plaintiff arranged to meet defendant at defendant's house and to walk with her to see the rental. After viewing the rental, Joseph told defendant that "the house did not meet [their] requirements" because there was insufficient closet and storage space to accommodate their needs. When defendant told plaintiff and Joseph that she very much wanted to rent the house to them, plaintiff responded that they "would just continue looking around for other rental properties."

After the three walked back to defendant's house, defendant "volunteered that she had some portable storage

closet units" in her basement and suggested that plaintiff and Joseph may "want to acquire some like them because [they] might need them wherever [they] found a new rental." Defendant then asked plaintiff and Joseph in to see the "storage solutions." Although plaintiff did not believe that defendant was trying to sell her any "storage solutions," she did believe that defendant's comments were in response to concerns that she and Joseph had expressed about the rental's lack of storage space and represented an extra effort on defendant's part to convince them to commit to the rental. Plaintiff was not willing to reconsider the rental because she and Joseph had already decided that it did not suit their needs and they had told defendant as much. However, plaintiff agreed to enter defendant's house "just to be polite"—"it was just kind of a sociable thing to do." The three went into defendant's house, but, almost immediately, Joseph returned to the car to do some work.

While plaintiff and defendant chatted in the living room, plaintiff noticed a recess in the floor, approximately four feet to her left. The recess was covered with a wooden plank. Plaintiff asked defendant about the recess, and defendant responded that the furnace had been there and that she was not sure what she was going to do with it. Defendant then led plaintiff past the recess, into a hallway, and downstairs into the basement. The two looked at the "storage solutions" and returned upstairs, back into the living room, and again past the recess.

Defendant then asked plaintiff if she was interested in seeing the remodeling in defendant's kitchen. Plaintiff agreed and followed defendant into the kitchen where they "spent some time" looking at and discussing the remodeling. Plaintiff followed defendant out of the kitchen, past a bedroom, and then looked inside a bathroom. They once again passed the recess, stopping and chatting while plaintiff had her back to the recess. Plaintiff then inexplicably stepped backwards. She fell through the recess all the way into the basement, suffering substantial injuries.

Defendant did not warn plaintiff about the recess at any time. However, plaintiff acknowledged that she had seen it before she and defendant went down to the basement and

that, based on what she had seen, she would not have intentionally stepped into the recess for fear of turning her ankle. There is no evidence that plaintiff knew of the risk of falling through the recess into the basement.

Plaintiff brought this action, alleging one count of negligence. Specifically, she alleged that she was an invitee while on defendant's property and that defendant failed to maintain a reasonably safe premises and warn her of the potential risk of harm. Defendant moved for summary judgment, arguing that she had not breached any duty because (1) plaintiff was a licensee at the time of her injury, and, (2) before falling, plaintiff was aware of the recess and recognized that it posed a risk of injury. Plaintiff countered that her status at the time of the injury was itself a disputed question of fact and that, regardless of plaintiff's status, defendant was liable because she had failed to maintain her premises in a reasonably safe condition and to warn plaintiff of potential dangers. The trial judge, without elaboration, granted defendant's motion.

On appeal, the parties raise arguments similar to those raised in the trial court. Plaintiff contends that a reasonable juror could conclude that defendant invited her into defendant's house in order to persuade plaintiff (and her husband) to reconsider their decision not to rent from defendant—and, specifically, that the invitation to look at "storage solutions" was calculated to allay plaintiff's concerns about the lack of storage space in the rental. Consequently, plaintiff argues, defendant owed her the duty of an invitee while she was inside defendant's house and that a jury could find that defendant breached that duty because she did not eliminate the condition creating the risk or adequately warn plaintiff of the risk.[1] Defendant responds that the evidence does not raise a question of fact regarding plaintiff's status; that defendant sufficiently exercised the duty of care owed to a licensee; and that, even assuming that plaintiff was an invitee, defendant met the requisite standard of care to plaintiff.

---

[1] On appeal, plaintiff does not contend that, if she was, in fact, a licensee, defendant breached any duty owed to her.

■    We begin with the question of plaintiff's status. An invitee is a "person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings of the possessor of the land." *Bidiman v. Gehrts*, 133 Or App 145, 148, 890 P2d 436, *rev den*, 321 Or 512 (1995) (citation omitted). An invitation may be expressed or implied by the landowner. *Id.* A landowner's duty to an invitee is to "warn of latent dangers" and to affirmatively "protect the invitee against dangers in the condition of the premises about which the occupier knows or should reasonably have known." *Walsh v. C & K Market, Inc.*, 171 Or App 536, 539, 16 P3d 1179 (2000).[2] Because a visitor's status can change while on the landowner's property, "one's status in a negligence action is determined at [the] time of the injury, not at the time of entry onto the premises." *Nelsen v. Nelsen*, 174 Or App 252, 256, 23 P3d 424 (2001) (citation omitted).

■    *Restatement (Second) of Torts* § 332 comment b (1965) describes the difference between an invitation given to an invitee and permission given to a licensee:

> "Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is *willing* that they shall enter if they desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is *desired* may be sufficient for the invitation."

(Emphasis added.) Comment c to section 332 sets out the factors important to determining a visitor's status:

---

[2] Conversely, a licensee is a person who, "with the occupier's permission, comes upon a premises for the licensee's own purposes, often social." *Nelsen v. Nelsen*, 174 Or App 252, 256, 23 P3d 424 (2001). A landowner owes a lesser duty to a licensee for harm caused by a condition on the land, and is liable only if

" '(a)  the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

" '(b)  he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

" '(c)  the licensees do not know or have reason to know of the condition and the risk involved.' "

*Id.* at 257-58 (quoting *Restatement (Second) of Torts* § 342 (1965)).

"In determining whether a particular person is an invitee, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness."[3]

Thus, in this case, the threshold inquiry is whether, at the time of her injury, plaintiff was an invitee. Or, more precisely, is there a disputed issue of fact as to whether a reasonable person could have understood defendant's words or conduct as expressing a desire that plaintiff come into her home for a purpose directly or indirectly connected to defendant's business? We hold that there is a triable issue of fact as to whether plaintiff was an invitee.

As noted, plaintiff's status is determined not by reference to defendant's subjective intent in inviting plaintiff into her home, or by plaintiff's subjective intent in entering the premises. Rather, the test is whether a reasonable person in plaintiff's position would have understood defendant's words as expressing a desire that plaintiff's entry be for a business purpose. *See Restatement* at § 332. Here, although (as defendant emphasizes) plaintiff did not go into defendant's house for a business purpose—indeed, she did so only to be "polite" and "sociable"—she nevertheless understood that defendant's invitation was part of an effort to convince plaintiff to reconsider the rental. In her deposition, plaintiff testified as follows:

"And [defendant] said, I can show you these portable storage closet things that I'm using in my own house. And my husband had already told her that we weren't interested in the place, probably.

"And I said, No, that's okay. You know, we just need to keep looking around and find something with closets, et cetera, et cetera, et cetera.

---

[3] Oregon courts often refer to *Restatement* section 332 when addressing questions of premises liability. *See Nelsen,* 174 Or App at 258; *see also Taylor v. Baker,* 279 Or 139, 148-49, 566 P2d 884 (1977); *Walsh,* 171 Or App at 541-42; *Bidiman,* 133 Or App at 149.

"And [defendant] said, Well, you might as well just come in and take a look, just because you never know when they might come in handy some day down the road.

"* * * * *

"It came across, I'm sure, her remarks to me were because I said there are no closets here, you know, there is no storage here. And I don't know what we would do about storage.

"And she was trying to persuade us to rent the house, but my husband had told her no, we weren't interested in the house."

Plaintiff's subjective understanding of defendant's invitation is not necessarily dispositive of how a reasonable person in plaintiff's position might have understood that invitation. Nevertheless, we believe that a reasonable juror might reach the same conclusion. We note particularly that defendant's invitation (to see "storage solutions") corresponded exactly with plaintiff and her husband's expressed reason for rejecting the rental (insufficient storage space). Given that congruence, the timing of the invitation, and the fact that the parties had no prior relationship, a jury could reasonably conclude that a person in plaintiff's position would have understood defendant's invitation as expressing a desire that plaintiff enter for a business-related purpose. Thus, a material question of fact exists regarding plaintiff's status at the time she entered defendant's house.[4]

Finally, defendant argues that, even assuming plaintiff was an invitee at the time of her injury, defendant exercised the requisite duty owed to an invitee and is, therefore, not liable to her. That alternative argument was not developed in the trial court and we will not consider it for the first time on appeal. *See Lozano v. Schlesinger*, 191 Or App 400, 407, 84 P3d 816 (2004) ("[We] are not permitted to affirm a judgment under the 'right for the wrong reason' principle when the losing party might have created a different record before the trial court had the prevailing party asserted the

---

[4] Defendant does not contend that plaintiff's status changed between the time she entered plaintiff's house, after returning from the rental, and the time of her injury.

alternative argument." (citation omitted)). The trial court erred in granting summary judgment.

Reversed and remanded.