Argued and submitted March 15, Fir Ridge Campus, Portland, reversed and remanded June 6, 2007

Melvis JOHNSON,
*Plaintiff-Appellant,*

*v.*

Robert SHORT
and Saundra Short,
*Defendants-Respondents.*

Polk County Circuit Court
04P1489; A128011

160 P3d 1004

Aaron Clingerman argued the cause and filed the brief for appellant.

Michael T. Stone argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Ortega and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff appeals, assigning error to the trial court's allowance of summary judgment for defendant property owners in this action based on premises liability. Plaintiff argues that the trial court erred in determining that, regardless of whether plaintiff was an invitee or licensee, defendants were entitled to prevail because plaintiff was aware of the dangerous condition and, thus, defendants had no duty to warn of, or remedy, that condition. We conclude that (1) the uncontroverted facts establish that plaintiff was an invitee, not a licensee, and (2) there are disputed issues of material fact as to whether defendants eliminated the danger posed by steps on defendants' premises and whether plaintiff adequately appreciated the hazard posed by those steps. Consequently, we reverse and remand.

Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact." ORCP 47 C. "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In reviewing the allowance of summary judgment, we view the evidence in the light most favorable to the nonmoving party, here plaintiff, drawing all reasonable inferences in his favor. *Bachmeier v. Tuttle*, 195 Or App 83, 85, 96 P3d 871 (2004). Except where specifically noted, the following facts were undisputed.

Plaintiff has worked as a delivery person for United Parcel Service (UPS) since 1977. Defendants have a home in Independence, Oregon, which they use as a residence and not to conduct business. Before October 30, 2001, plaintiff had delivered packages to defendants' home, on average, every month or two for five or six years.

On October 30, 2001, plaintiff went to deliver a package—a birthday present from a third party—to defendants' home. The weather was "yucky," "dewy, drizzly, [and] gray." Plaintiff approached defendants' home from the side, where a

set of gray steps led up to the porch. As plaintiff was about to go up the steps, he noticed that they looked "very slick" because they were completely covered in wet moss or algae. Plaintiff was "exceedingly cautious" as he went up the steps. There was another set of steps—a few feet to the left of the first set—that also led to the porch. As addressed more fully below, there is no direct evidence that plaintiff was aware of the second set of steps at the time of his injury, and there is no evidence regarding the condition of those steps at that time.

Upon reaching the porch, plaintiff dropped off the package on defendants' doorstep (defendants were not home at the time) and then went back down by the same route, on the same mossy steps. As he did so, plaintiff held onto the side of the house, in an attempt to keep his balance. Nevertheless, plaintiff slipped and fell, injuring himself.

Plaintiff brought this action, alleging one count of negligence. Specifically, he alleged that he was an invitee on defendants' property and that defendants failed to maintain a reasonably safe premises and warn him of the potential risk of harm.

Defendants moved for summary judgment, raising two alternative arguments. First, defendants asserted that plaintiff was a licensee and, consequently, because the danger presented by the slippery steps "was open and obvious," they owed him no duty either to correct that condition or to warn him of that condition. Second, defendants contended that, even if plaintiff was an invitee, they could not be held liable because (1) by providing an alternative route of "safe" steps, they had, effectively, eliminated or remedied the "unreasonably dangerous" condition of the slippery set of steps and (2) because plaintiff recognized the hazards posed by the slippery steps and used them anyway, any failure to warn of that condition could not have contributed to plaintiff's injuries. Plaintiff responded that the determination of whether he was a licensee or an invitee implicated disputed issues of fact and that, regardless of his status at the time of the injury, defendants were not entitled to summary judgment because there were disputed issues of fact as to whether

they had failed to maintain their premises in a reasonably safe condition and to warn him of potential hazards.

The trial court granted the motion for summary judgment. The court determined that it need not address plaintiff's status because, regardless of whether plaintiff had been a licensee or an invitee, defendants were not liable because they had "eliminated" the dangerous condition by providing the alternative set of steps and because plaintiff recognized the danger and proceeded anyway:

> "If Johnson came upon the premises as a mere licensee, the only duty owed to him was to warn him of any concealed, dangerous conditions of which the owners had knowledge. It is undisputed that Johnson saw, and fully appreciated the dangerous nature of the steps. As such, the danger was not concealed, and no duty was breached.

> "Even if Johnson is regarded as an invitee, the Shorts' only duty was to protect him from 'an unreasonable risk of harm' by either 'eliminat[ing] the condition that created the risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm.' It was obvious that the steps that Johnson chose to use were dangerously slick. There was another set of steps leading to the porch a few feet away. There is no contention that those steps were slippery or in any way dangerous. By providing a safe route, the Shorts had, in effect, eliminated the condition creating the risk. Further, defendants can discharge their duty **either** by eliminating the condition **or** by giving adequate warning. Johnson was very familiar with these premises, and was fully aware of the dangerous condition of the steps. Aware of the risks, Johnson chose to ascend the steps. Then he chose to go down the same route."

(Footnote omitted; brackets and boldface in original.)

On appeal, the parties essentially reiterate their arguments before the trial court. As amplified below, we conclude that the uncontroverted evidence establishes, as a matter of law, that plaintiff was an invitee at the time that he slipped on the steps and injured himself. We further determine that there are disputed issues of material fact pertaining to whether defendants breached their duty of care owed to plaintiff as an invitee. Accordingly, we reverse the allowance of summary judgment and remand.

We begin with the question of plaintiff's status. In general, a business invitee is a "person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Restatement (Second) of Torts* § 332(3) (1965); *see also Cassidy v. Bonham*, 196 Or App 481, 486, 102 P3d 748 (2004) (applying that formulation). The requisite invitation can be express or implied by the landowner. *Id.* Conversely, a licensee is a person who, "with the [possessor's] permission, comes upon a premises for the licensee's own purposes, often social." *Nelsen v. Nelsen*, 174 Or App 252, 256, 23 P3d 424 (2001).

The distinction is significant because of the differences in the duty of care the possessor of the property owes the visitor, depending on the visitor's status. The possessor's duty to an invitee is to "warn of latent dangers" and to "protect the invitee against dangers in the condition of the premises about which the [possessor] knows or should reasonably have known." *Cassidy*, 196 Or App at 486 (citation omitted). In contrast, a possessor of land is liable to a licensee for harm resulting from a condition on the land only if

" '(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

" '(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

" '(c) the licensees do not know or have reason to know of the condition and the risk involved.' "

*Nelsen*, 174 Or App at 258 (quoting with approval *Restatement* at § 342).

The distinction between "invitation" and "permission" to come upon land can be ephemeral. Nevertheless, in *Cassidy*, we invoked, as instructive, the *Restatement*'s discussion of that distinction:

" 'Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from

mere permission in this: an invitation is conduct which justifies others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is *willing* that they shall enter if they desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is *desired* may be sufficient for the invitation.' "

*Cassidy*, 196 Or App at 486 (quoting *Restatement* at § 332 comment b) (emphasis in original).

■ Finally, in this context, even if the injured visitor can prove an express or implied invitation to enter, he or she must also establish that the entry was for purposes pertaining to the possessor's "economic advantage."[1] In *Parker v. Hult Lumber & Plywood Co.*, 260 Or 1, 8, 488 P2d 454 (1971), the court summarized the substance of that "economic advantage" test:

"It defines an invitee as one who comes upon the premises at the occupier's invitation, express or implied, upon business which concerns the occupier. *It proceeds upon the assumption that the economic advantage of plaintiff's presence to the occupier imposes upon him the duty to use due care for plaintiff's safety.*"

(Emphasis added.) *See Walsh v. C & K Market, Inc.*, 171 Or App 536, 539-40, 16 P3d 1179 (2000) (describing "economic advantage" test); *see generally* Fowler V. Harper, Fleming James, and Oscar S. Gray, 5 *The Law of Torts* § 27.12, 219 (2d ed 1986) ("The economic benefit theory proceeds on the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit.").

We return to this case: Is a delivery driver who has routinely delivered packages to a person's home over a substantial period of time an "invitee" under the "economic advantage" test? No reported Oregon decision directly addresses that question. *Cf. Woolston v. Wells*, 297 Or 548, 550, 557-58, 687 P2d 144 (1984) (presuming, without explaining, that the plaintiff, a television repairman who "fell

---

[1] The second test recognized under Oregon law for determining "invitee" status—the "public invitee" test—is not applicable in this context. *See generally Walsh v. C & K Market, Inc.*, 171 Or App 536, 539-40, 16 P3d 1179 (2000) (summarizing "economic advantage" and "public invitee" tests).

while ascending stairs to deliver a television set to defendants' tenant," was an invitee).

Defendants contend that the answer must be negative for several reasons, including (1) defendants did not order the package that plaintiff delivered and, thus, did not even impliedly or indirectly "invite" plaintiff's entry onto the premises; (2) the delivery was not business related—it was a birthday present; and (3) the premises was defendants' home and, thus, there was no business-related "nexus."

Conversely, plaintiff contends that defendants derived an "economic advantage" from his provision of delivery services and that, by accepting the regular provision of those services without objection over a period of several years, defendants implicitly invited his entry on October 30, 2001. Moreover, plaintiff suggests, it would be unworkable in the context of the regular provision of delivery services to distinguish between whether a particular package had been ordered by the homeowner or was being sent unsolicited to the homeowner—or, similarly, to predicate the determination of premises liability on the nature or value of the particular item being delivered.

We agree with plaintiff. Although, as noted, there is no controlling Oregon authority, the preponderant view of other jurisdictions adhering to the "economic advantage" test is that persons in circumstances analogous to plaintiff's are "business visitor" invitees. We concur in that conclusion.

We observe, at the outset, that the residential character of the premises is hardly conclusive—and, in this case, is ultimately immaterial—in determining plaintiff's status. As noted, *Restatement* at § 332(3) defines a "business visitor," within the "economic advantage" formulation, as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Restatement* at § 332 comment e amplifies that definition:

> "Business visitors fall into two classes. The first includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open

to the public, as where a person enters a shop to make a purchase, or to look at goods on display. * * *

"The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or *for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor;* and so is a workman who comes to make alterations or repairs on land used for residence purposes."

(Emphasis added.) *See Taylor v. Baker,* 279 Or 139, 147, 566 P2d 884 (1977) (citing comment e with approval, subject to certain qualifications that are inapposite here).

Consistently with that view, other jurisdictions have deemed a variety of visitors performing beneficial services on residential property to be "business visitor" invitees. Those services range from garbage and trash removal,[2] to meter reading,[3] to delivery of packages and other items, including pizzas, that the residential occupant has ordered.[4] *Cf.*

---

[2] *See, e.g., Toomey v. Sanborn,* 146 Mass 28, 14 NE 921 (1888) (involving injury to city collector of "ashes and offal"). *See generally* Robert L. Simpson, Annotation, *Premises Liability: Liability of Owner or Occupant to Garbage or Trash Man Coming on Premises in Course of Duty,* 36 ALR 3d 610, 612-13 (1971).

[3] *See, e.g., Ross v. Lowe,* 619 NE2d 911 (Ind 1993); *Sims v. Giles,* 343 SC 708, 541 SE2d 857 (2001). *See generally* J. D. Perovich, Annotation, *Liability of Owner or Operator of Premises for Injury to Meter Reader or Similar Employee of Public Service Corporation Coming to Premises in Course of Duties,* 28 ALR 3d 1344, 1346 (1969).

[4] *See, e.g., Hardeman v. Spires,* 232 Ga App 694, 503 SE2d 588 (1998) (assuming without discussion that pizza delivery person who slipped and fell while descending a wet stairway after delivering pizza to the defendant's home was an invitee); *Wentz v. Penswood Apartments,* 359 Pa Super 1, 518 A2d 314 (1986) (assuming without discussion, in slip-and-fall case, that UPS driver who was attempting to deliver package to residential tenant was an invitee); *Nottie v. Picchione,* 74 RI 93, 96, 59 A2d 177, 178 (1948) (plaintiff department store driver, who fell while delivering package from store to the defendants' home, "was on defendants' premises as a business invitee and not as a mere licensee"). *See generally* David A. Johns, Annotation, *Liability of Owner or Operator of Premises for Injury to Person Coming to Premises in Course of Delivery or Pickup of Merchandise or Similar Products,* 32 ALR 3d 9, 21 (1970) (delivery persons are generally deemed to be invitees, unless "the owner did not derive a benefit from the original presence of the * * * deliveryman"); Harper, James, and Gray, 5 *The Law of Torts* § 27.12 at 223 (deliverers of parcel and freight are generally deemed to be invitees "whether the premises be arranged for business or for dwelling purposes").

*Woolston,* 297 Or at 550, 557-58 (presuming that plaintiff, who was injured while returning a repaired television to defendants' tenant, was an invitee). Similarly, mail carriers who have been injured while delivering mail to residential premises have been deemed to be invitees.[5]

In sum, where, as here, plaintiff asserts that he was a "business visitor" invitee, the residential character of defendants' property is immaterial. Rather, consistently with the "economic advantage" test, the inquiry is whether, at the time that plaintiff was injured, he was on defendants' premises pursuant to an express or implied invitation and whether his presence was of material benefit to defendants.

We acknowledge that, in this case, unlike in those involving trash collectors or meter readers, the injured plaintiff's entry onto defendants' property was not an implicit condition of a continuing contract for the provision of services. We also appreciate that here, unlike in most, and perhaps all, of the reported decisions involving residential deliveries, defendants did not order the item that plaintiff delivered. Nevertheless, "invitee" status need not be express—it may also be implied—and the totality of the undisputed circumstances here establishes an implied invitation.

Our determination in that regard rests on plaintiff's regular provision of services beneficial to defendants over a period of years and defendants' ongoing acceptance, without objection or qualification, of those beneficial services, which were, necessarily, dependent on plaintiff's entry onto defendants' property.[6] This was not, for example, a case in which

---

[5] *See Capener v. Duin,* 173 NW2d 80, 81, 85 (Iowa 1969) (presuming that plaintiff mail carrier who was injured in fall "on icy porch steps leading to a mailbox at defendants' residence," was an invitee). *See generally* A. L. Schwartz, Annotation, *Liability of Owner or Occupant of Premises for Injuries Sustained by Mail Carrier,* 21 ALR 3d 1099, 1103 (1968); *but accord Haffey v. Lemieux,* 154 Conn 185, 224 A2d 551 (1966) (even assuming, without deciding, that plaintiff mail carrier who was injured when concrete steps collapsed was a "licensee," defendant homeowner was liable for breaching duty of care owed to a licensee).

[6] Because there is no evidence in this record of other UPS or functionally similar parcel delivery personnel bringing packages to defendants' home, our discussion that follows necessarily focuses on plaintiff's individual provision of services. However, as a legal and practical matter, our analysis and conclusion would be the same if plaintiff had been one of a succession of "similarly situated" delivery persons.

some of defendants' friends, as a one-time surprise, hired a chanteuse to deliver a "singing valentine" to defendants at their home. Rather, it is undisputed that plaintiff, for a period of at least five years, delivered packages on an average of once every other month to defendants' home. Thus, plaintiff had entered defendants' property roughly 30 times previously to provide services benefitting defendants and, given their lack of any objection to his entry and the nature and requirements of plaintiff's work, defendants had every reason to believe that plaintiff would continue to do so.

The line between a landowner's mere acquiescence to entry and implied invitation can, in some cases, be elusive. This is not such a case. The totality of the circumstances here—the frequency and regularity of plaintiff's business-related visits over an extended period of time and defendants' unqualified acceptance of the material fruits of those visits—gave rise to an implied invitation. *See generally Premises Liability*, 62 Am Jur 2d 473 § 94 (2006) (noting that invitation may be implied from, *inter alia*, "some relationship inuring to the benefit of both the injured party and the occupier of the premises" and the "habitual acquiescence of the owner"); 21 ALR 3d 1099, 1103 (1969) ("Because of the nature and the regularity of his visits[,] the courts generally have treated a mail carrier as a business visitor or invitee[.]").[7]

Finally, with respect to plaintiff's status as an invitee or licensee, we reject defendants' contention that the nature of the item delivered might affect plaintiff's status. None of the reported cases involving delivery people or postal carriers suggests such a distinction. In all events, it would be insupportable. The proper focus is on the services provided, not the nature or value of the item delivered. *See* 32 ALR 3d 9, 21 (1970) (noting that, in reported cases applying the "economic advantage" test, "[t]he type of goods delivered or picked up" is "immaterial in determining the status of the person who delivers the goods or picks them up").

---

[7] Given that conclusion, we avoid the incongruities that could arise if a long-time parcel delivery person's status were deemed to vary depending on whether the homeowners had ordered the item or someone else had ordered the item for them. Under such a construct, the status of a delivery person who had delivered dozens or hundreds of parcels to the same residence could vary day-to-day and parcel-to-parcel.

■ We proceed, then, to whether there are disputed issues of material fact pertaining to defendants' alleged breach of the duty of care owed to plaintiff as invitee. As noted, the trial court concluded that, even assuming that plaintiff was an invitee, defendants were nevertheless entitled to summary judgment for two reasons: (1) by providing the second set of steps as a route to the porch, defendants "had, in effect, eliminated the condition creating the risk"; and (2) plaintiff's recognition of the hazards posed by the slippery steps and his decision to use the steps notwithstanding that recognition abrogated causation and liability for any breach of the duty to warn of that condition. *See* 213 Or App at 259 (quoting trial court's opinion).

The trial court's first rationale depends on an erroneous factual premise. Even assuming that, in some circumstances, a possessor of property could "eliminate" an otherwise unreasonably dangerous condition by providing an obvious and easily accessible alternative, safer route,[8] there is no evidence in the summary judgment record regarding the condition of the second set of steps, much less that they were, in fact, "safer" than the slippery steps.

■ To be sure, the trial court, in granting summary judgment, noted that "[t]here is no contention that those [alternative] steps were slippery or in any way dangerous." But, respectfully, that formulation impermissibly shifts the burden of production and, ultimately, persuasion regarding the alleged "safer" alternative to plaintiff. To the extent that defendants contend that a manifestly unsafe condition was somehow remedied because of their provision of a safer alternative, it was incumbent upon them, not plaintiff, to proffer proof of the efficacy of those efforts. *See, e.g.*, *Behrendt v. Ahlstrand*, 264 Minn 10, 13, 19, 118 NW2d 27, 29, 33 (1962) (where plaintiff business invitee slipped on icy patch at defendants' dairy while "us[ing] the entrance customarily used by all drivers," and the defendants asserted that the plaintiff should have taken an alternative route to avoid the icy condition, the plaintiff did not bear the burden of "establishing the impracticability or impossibility of using" other

---

[8] That proposition is, at least, problematic where, as here, the unsafe condition remained freely accessible to visitors.

routes; rather, "the burden of proving the favorability of a safer route of travel" was on the defendants).[9]

The trial court's second rationale, which depends on plaintiff's recognition and appreciation of the hazards presented, also implicates disputed issues of material fact. As defendants emphasize, plaintiff acknowledged that the steps looked "very slick," and that he attempted to be "exceedingly cautious" as he used the steps. At the same time, however, plaintiff also testified in his deposition "that everything[ ] [was] fine. I mean it looked good, looked like I could do it, so that's the attempt that I made." Given the latter testimony, there is a disputed issue of fact as to whether plaintiff had such an appreciation of the danger presented that there was, as the trial court concluded, "no causal connection" between plaintiff's injury and "defendants' failure to either discover the danger or to provide warning of it." *See generally Shum v. Venell*, 273 Or 143, 157, 539 P2d 1085 (1975) (" 'There is a difference between seeing something in the roadway and realizing that danger was likely to result therefrom.' " (quoting *Kehm v. Dilts*, 222 Iowa 826, 831, 270 NW 388, 391 (1936))).

Reversed and remanded.

---

[9] We note, further, that the summary judgment record here also discloses a disputed issue of fact as to whether, at the time of his injury, plaintiff was aware of the existence and availability of the second set of steps. Although plaintiff had often previously left packages on defendants' porch, which could support an inference of awareness of the second set of steps, there is no direct evidence that he knew of those steps, including evidence that he had ever used them. Moreover, from the photographs submitted by defendants, it is by no means obvious that a person approaching the porch as plaintiff did would necessarily have seen the second set of steps.