Argued and submitted October 28, 2014, affirmed January 27, 2016

John R. CURRIER,
*Plaintiff-Respondent,*

*v.*

WASHMAN, LLC,
dba Washman Car Washes,
a domestic limited liability company,
*Defendant-Appellant,*

*and*

Dorothy N. WILLIAMS,
*Defendant.*

Multnomah County Circuit Court
120405409; A154821

366 P3d 811

Michael A. Lehner argued the cause for appellant. With him on the briefs was Lehner & Rodrigues, P.C.

Wendy M. Margolis argued the cause for respondent. With her on the brief was Cosgrave Vergeer Kester LLP.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals a judgment awarding plaintiff damages for the injuries he sustained after plaintiff rode his bicycle onto the wet concrete surface of defendant's car wash property, the bicycle tires slid, and plaintiff fell from the bicycle. Defendant contends that the trial court erred in denying its motion for directed verdict. According to defendant, there was no evidence from which a jury could find that plaintiff was defendant's licensee to whom defendant owed a duty to exercise reasonable care. Before the trial court, defendant argued that plaintiff was a trespasser and not a licensee who entered the property by express or implied invitation, and the parties agreed that defendant is not liable to the plaintiff if plaintiff was a trespasser on defendant's property. In response to defendant's contention on appeal, plaintiff argues that there was sufficient evidence from which to infer that defendant impliedly consented to plaintiff entering its property, plaintiff was a licensee, and the jury properly considered his negligence claim. We agree with plaintiff and, accordingly, affirm.

The facts pertinent to plaintiff's status when he entered defendant's property are undisputed. Defendant owns and operates a car wash facility that is located at the southeast corner of the intersection of Northeast Weidler Street and Martin Luther King Jr. Boulevard in Portland. The property's north border on Northeast Weidler Street and its west border on Martin Luther King Jr. Boulevard are open to those streets, and have no fences, barriers, or demarcations that indicate where the sidewalk ends and the property begins. Motor vehicles can leave the car wash facility and travel a short distance on a marked lane that exits on Northeast Weidler Street. The accident occurred on that lane.

There is considerable bicycle, pedestrian, and motor vehicle traffic on the streets, bicycle lanes, and sidewalks that adjoin the car wash facility. Pedestrians and bicyclists enter and leave the property at will, and defendant did not seek to prevent them from doing so. At the time of the incident, there were no posted "no trespassing" signs or other access controls on the property. Defendant's assistant

manager testified that "[w]e don't do anything" to inform pedestrians and bicyclists that they are not allowed on the property. Other nearby businesses do not limit the use of their parking and drive lane areas by pedestrians and bicyclists. There was testimony that most people consider the commercial properties in that area to be open to use by the travelling public during normal business hours.

On August 6, 2011, plaintiff was riding his bicycle eastbound in a bicycle lane on Northeast Weidler Street and approaching the car wash property. A car was leaving the car wash property and had stopped at the curb cut on Northeast Weidler Street to wait for traffic to clear. The car blocked plaintiff's travel on the bike lane and the adjacent sidewalk. Plaintiff testified that he thought that it was unsafe to ride around the car into the dense traffic to his left or to stop and wait for the obstructing car to leave the bicycle lane. Plaintiff attempted to ride around the back of the car by leaving the bicycle lane, crossing the sidewalk, and riding into the drive lane and parking area of the car wash property.

In the course of that maneuver, plaintiff noticed that part of the concrete pavement in his path was damp. Plaintiff testified that he proceeded anyway because he had always safely ridden his bicycle over ordinary damp pavement and did not believe the condition was dangerous. But when plaintiff encountered the damp surface of the car wash property, his bicycle tires slid out from under him as if they were "on ice." The concrete was actually wet with a combination of water, soap, and "anything that drips off the car[s]" as they come out of the car wash tunnel. Plaintiff fell with the bicycle and sustained a fracture of his left hip and a deep cut in his elbow, both of which required surgery.

Defendant admitted to knowing that the area of the car wash property where plaintiff fell "was the most slippery portion of the car wash." There were no posted signs that warned others about the slippery surface. Defendant also knew that traffic on Northeast Weidler Street was often so heavy that customers leaving the car wash property had difficulty turning onto the street, and would stop on the sidewalk and the bicycle lane. Defendant did not discourage

those customers from blocking the sidewalk and bicycle lane, and even posted a sign that affirmatively instructed customers to not stop on the slippery area of the property. Defendant was aware that pedestrians and bicyclists traversed the car wash property both for their own purposes and for the specific purpose of moving around defendant's customers who blocked the bicycle lane and sidewalk.

At the conclusion of defendant's case, defendant moved for a directed verdict. Defendant argued that no reasonable juror could find that defendant consented to plaintiff's entry to the car wash property, so as to make it accountable to plaintiff as its licensee, and that it breached no duty owed to plaintiff as a trespasser. Defendant asserted that it never expressly consented to plaintiff's entry and that "[a] failure to object or prevent trespass does not manifest consent to trespass." The trial court denied the motion, stating that, although mere failure to object to trespassing is not consent, a reasonable jury could find implied consent when considering the surrounding circumstances. The jury found that plaintiff had not trespassed, and awarded plaintiff a verdict of damages.

On appeal from the denial of a motion for directed verdict, we review the evidence and any resulting inferences in the light most favorable to the party that obtained a favorable verdict, and the verdict cannot be set aside "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary" to support the verdict. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). We do not weigh conflicting evidence or evaluate credibility when reviewing the record. *Fang v. Li*, 203 Or App 481, 485, 125 P3d 832 (2005). "A directed verdict is appropriate only if there is a complete absence of proof on an essential issue or when there is no conflict in the evidence and it is susceptible of only one construction." *Malensky v. Mobay Chemical Corp.*, 104 Or App 165, 170, 799 P2d 683 (1990), *rev den*, 311 Or 187 (1991). Thus, we affirm the denial of a motion for a directed verdict if we find any evidence, when viewed in the light most favorable to the plaintiff, that could support the jury's ultimate finding.

On appeal, the parties renew their arguments regarding the sufficiency of the evidence to prove that plaintiff was a licensee of defendant and not a trespasser. Oregon adheres to the traditional rule that a landowner's duties to a visitor vary depending on whether the visitor is an invitee, licensee, or trespasser. *Walsh v. C & K Market, Inc.*, 171 Or App 536, 539, 16 P3d 1179 (2000). "An invitee is one who comes upon the premises upon business which concerns the occupier, with the occupier's invitation, expressed or implied." *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 191-92, 421 P2d 370 (1966). A possessor of land has the duty to warn an invitee of latent dangers and to "protect the invitee against dangers in the condition of the premises about which the [possessor] knows or should reasonably have known." *Cassidy v. Bonham*, 196 Or App 481, 486, 102 P3d 748 (2004) (internal quotation marks omitted).

"A licensee is one who goes onto land of another with an express or implied invitation for his own pleasure and purposes, while a trespasser is one who enters or remains upon lands in the possession of another unlawfully and without the consent or acquiescence of the owner." *Hansen v. Cohen*, 203 Or 157, 165, 278 P2d 898 (1955) (on rehearing). A possessor of land may be liable to a licensee for injury resulting from a condition on the land if, under particular circumstances, the possessor "fails to exercise reasonable care to make the condition safe, or to warn the licensee of the condition and the risk involved." *Johnson v. Short*, 213 Or App 255, 260, 160 P3d 1004 (2007) (internal quotation marks omitted). On the other hand, a possessor of premises owes no duty to a trespasser other than to avoid injuring the trespasser by willful or wanton conduct. *Stewart v. Kralman*, 240 Or App 510, 517, 248 P3d 6 (2011). *But see Towe v. Sacagawea, Inc.*, 357 Or 74, 101-02, 347 P3d 766 (2015) (establishing duty of reasonable care to trespasser who is traveling on a public way).

Thus, whether a visitor is a licensee or trespasser turns on whether the landowner consents to or invites the visitor's presence. *Denton v. L.W. Vail Co.*, 23 Or App 28, 32, 541 P2d 511 (1975). In *Denton*, 23 Or App at 33, we adopted the meaning of "consent" for premises liability that was set

out in the *Restatement (Second) of Torts* section 330 comment c (1965):

> "The word 'consent,' or 'permission,' indicates that the possessor is in fact willing that the other shall enter or remain on the land, or that his conduct is such as to give the other reason to believe that he is willing that he shall enter, if he desires to do so. A mere failure to object to another's entry may be a sufficient indication or manifestation of consent, if the possessor knows of the other's intention to enter, and has reason to believe that his objection is likely to be effective in preventing the other from coming. On the other hand, the fact that the possessor knows of the intention to enter and does not prevent it is not necessarily a manifestation of consent, and therefore is not necessarily permission. A failure to take burdensome and expensive precautions against intrusion manifests only an unwillingness to go to the trouble and expense of preventing others from trespassing on the land, and indicates only toleration of the practically unavoidable, rather than consent to the entry as licensee. Even a failure to post a notice warning the public not to trespass cannot reasonably be construed as an expression of consent to the intrusion of persons who habitually and notoriously disregard such notices."

(Internal quotation marks omitted.)

*Denton* goes on to explain that consent can be provided "by acts and not just by words." *Id.* We relied on *Restatement (Second) of Torts* section 330 comment e (1965) for that conclusion. That comment provides:

> "*License created otherwise than by words.* The consent which is necessary to confer a license to enter land, may be expressed by acts other than words. Here again the decisive factor is the interpretation which a reasonable man would put upon the possessor's acts. Thus one who constructs and opens a roadway across his land for the benefit of his friends and neighbors may thereby express his willingness to permit the entry of strangers who wish to cross the land, unless he posts a notice to the contrary * * *.
>
> "In determining whether a particular course of action is sufficient to manifest a consent to enter the land, consideration must be given to all of the surrounding circumstances. If a railway company prepares a paved or boarded path across its tracks, it may or may not give members of

the public reason to believe that the pathway is prepared for their use. If there is no other crossing available within a considerable distance, and there are no warning signs to the contrary, the public may reasonably assume that the path is meant for public use. On the other hand, if there is a street crossing close by, and the railroad pathway is closed by a gate, such an assumption might not be justified. * * *

"In determining this[,] account must be taken of customs prevailing in the community. 'The well-established usages of a civilized * * * community' entitle everyone to assume that a possessor of land is willing to permit him to enter for certain purposes until a particular possessor expresses unwillingness to admit him. Thus a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction. So too, if there is a local custom for possessors of land to permit others to enter it for particular purposes, residents in that locality and others knowing of the custom are justified in regarding a particular possessor as conversant with it and, therefore, in construing his neglect to express his desire not to receive them as a sufficient manifestation of a willingness to admit them. Thus, if it be a custom in a particular town for owners of vacant land to permit persons to cut across it, one doing so is a licensee unless by posted notice or otherwise the particular owner objects to the practice. Familiar intimacy may also justify the assumption of consent to such visits as friends customarily pay to one another."

*Id.* (emphasis added); *see also Restatement (Second) of Torts* § 892 comment d (1979) ("In determining whether conduct would be understood by a reasonable person as indicating consent, the customs of the community are to be taken into account. This is true particularly of silence or inaction.").

Applying those principles here, the jury could consider evidence of the surrounding circumstances and customs prevailing in the community in evaluating whether defendant's conduct implied consent to plaintiff's entry. Plaintiff presented evidence that defendant did nothing to inform bicyclists that they were unwelcome on the property, particularly to continue to travel around a blocked public way. Plaintiff also produced evidence suggesting that it was the community custom for bicyclists and pedestrians to

traverse the parking lots and driveways of stores open for daily business, and customary for bicyclists to assume that they were allowed to do so. In that context, a jury could infer that defendant's failure to object to past and future entries on the property by bicyclists or otherwise to restrict their access to the property implied permission to enter.

Defendant argues that the evidence that other bicyclists have traversed defendant's and other property shows only that other bicyclists have "got[ten] away with" trespass, and that the evidence "is simply not sufficient to show a custom." We cannot say, however, that the evidence of travel customs and defendant's inactions, viewed in the light most favorable to plaintiff, is insufficient as a matter of law to support a determination of implied consent.

In sum, evidence that defendant did not object to past or future entries to the property or otherwise to restrict access to the property and that community members commonly interpreted that type of landowner inaction as consent to entry is enough to create a jury question as to whether plaintiff was a licensee. The trial court did not err in denying the motion for directed verdict.[1]

Affirmed.

---

[1] The Supreme Court's recent decision in *Towe*, 357 Or 74, addresses the duties that a landowner owes to those who trespass onto the landowner's land in the course of traveling adjacent to it. That limited duty is one of "ordinary care, rather than a duty to avoid only willful or wanton conduct, as would be owed to an ordinary trespasser" and the duty "generally protects those who deviate from the public way onto the private land only to the extent that the deviation is a normal incident of traveling the public way." *Id.* at 101-02; *see also Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 51 comment o (2012) (landowners have a duty of reasonable care when travelers on adjacent public ways foreseeably deviate onto the landowner's property). In this case, plaintiff did not argue at trial, and does not argue on appeal, that defendant owed him a duty of reasonable care even if he trespassed when he entered onto defendant's property. Accordingly, we do not address that line of reasoning further.